# AFFIDAVIT OF TASK FORCE OFFICER DAVID J. SPIRITO IN SUPPORT OF A CRIMINAL COMPLAINT

I, David J. Spirito, a Task Force Officer with the U.S. Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am employed as a Detective with the Newton Police Department, where I have worked since 2000. Since 2011, I have been assigned to the Boston Office of the New England Division of the Drug Enforcement Administration ("DEA") as a Task Force Officer ("TFO"). I am currently assigned to the Organized Crime Drug Enforcement Task Force Boston Strike Force, which is a strike force incorporating various law enforcement agencies, including DEA, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement Homeland Security Investigations ("HSI"), and the U.S. Marshals Service ("USMS"), among other agencies. I am a graduate of the Massachusetts Criminal Justice Training Council ("MCJTC") Police Academy (1st Municipal Police Officers Class, Weymouth, Massachusetts).

2. As a police Detective and DEA TFO, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the Police Academy. I also have attended additional specialized training courses in furtherance of my past and current assignments.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I

have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, state, national and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute drugs and the proceeds of drug trafficking. I am familiar with the manner in which drug traffickers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses."

5. Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. However, drug traffickers are aware of law enforcement's use of electronic surveillance, and thus frequently endeavor to thwart detection by changing cellular telephone numbers, using multiple cellular phones at the same time, and/or utilizing prepaid cellular phones where the user of the phone is not required to provide personal identifying information. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am familiar with the manner in which drug traffickers use coded, veiled, or slang-filled telephone conversations when discussing their

illegal business, in an effort to further prevent detection, and that they often use text messages in lieu of telephone calls to avoid speaking over the telephone. I am familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise their conversations and operations.

## **PURPOSE OF AFFIDAVIT**

6. I submit this affidavit in support of the following:

   a. A criminal complaint charging Michael FEROLITO with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) (the "Charged Offense").

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is probable cause to believe that FEROLITO committed the Charged Offense.

### **Probable Cause**

*FEROLITO's Devices were Searched in Las Vegas, Nevada
and Contained Evidence of Drug Trafficking*

8. On July 19, 2019, FEROLITO departed for Brussels, Belgium from Boston Logan airport. On July 24, 2019, FEROLITO returned from the trip and landed in Las Vegas, Nevada. He was traveling with Mark Taslakian and his girlfriend, Sonia Goff.

9. FEROLITO was questioned upon his arrival in Las Vegas. FEROLITO claimed he had traveled to Brussels for a music festival along with Taslakian and Goff. FEROLITO stated he owned 30 to 40 companies but could only name two: Iron Mike's debris removal and the Law Offices of Michael Gerard, which was located in Miami. FEROLITO stated he no longer practiced law. FEROLITO was in possession of two prescription bottles with a light blue powdery substance inside and small light blue tablets. The prescription bottle label was in his name and was for

Oxycodone. The powder and pills were tested and indicated they were Oxycodone. FEROLITO also had two doses of Narcan and stated he needed those in case he overdosed. FEROLITO was also in possession of a brand new iPad pro and an iPhone XS Max.

10. A CBP supervisor authorized a search of the iPad and iPhone and FEROLITO provided his password for the devices. Stored on the iPhone, investigators found multiple pictures of a pill press machine with various pill molds. Additional drug related photos included the following:

   a. Various pictures of FedEx, UPS, and Western Union receipts along with screen shots of fentanyl purportedly sent from China;

   b. Snapshots of a website displaying crystal methamphetamine and photos of FEROLITO holding a plastic container with what appears to be large shards of crystal methamphetamine;

   c. Several pictures of pills being made in the pill press;

   d. Various photos of bitcoin transactions;

   e. Snapshots of conversations on Wicker detailing drug sales and of FEROLITO purchasing tablets and powders; and

   f. A photo of a glass bowl full of small orange pills and a table with several 100 dollar bills.

11. FEROLITO's iPhone was detained to allow investigators to conduct a more extensive search. Investigators told FEROLITO he would get the phone back after the search was completed. FEROLITO replied, "You can keep the phone . . . I would be ok with never getting it back. What is on that phone is not me anymore. I'm a different person now."

12. FEROLITO was taken to an interview room for further interviewing. Investigators asked FEROLITO about the pictures of the FedEx, UPS, and Western Union receipts and the screen shots of the fentanyl, crystal methamphetamine, and the pill press. FEROLITO stated that he was helping out a girl who was a stripper and that it was not for him. FEROLITO went on to say that he did not know what he was doing in that part of his life and that we would not find anything recently. FEROLITO was shown pictures of what appeared to be pills packaged in baggies for sale and videos of him saying he was high in the past two weeks. He responded by saying he had a degree in criminal justice and did not believe he should be saying anything else. FEROLITO was advised that he was not being arrested and was not read his Miranda rights, but rather the questioning was part of his interview upon entering the United States. FEROLITO stated he was now focusing on helping his mom and dad and that he was very sick. FEROLITO provided two addresses in Florida which he claimed to be his residences.

13. A further examination of FEROLITO's iPhone revealed numerous photos and videos of pill presses and counterfeit tablets. Examples are as follows:

   a. February 6, 2018 – Live shot of a pill pressing machine;

   b. March 11, 2018 – Video of a pill pressing machine manufacturing blue tablets consistent with that of oxycodone.

   c. April 8, 2018 – Live shot of a pill pressing machine in a residence directly next to a bowl of orange powder.

   d. June 10, 2018 - Video of a pill pressing machine manufacturing blue tablets consistent with that of oxycodone.

   e. July 14, 2018 – Live shot of a bowl containing several hundred blue tablets consistent with that of oxycodone.

   f. August 8, 2018 - Live shot of a bowl containing several hundred orange colored tablets marked with "B-974/30," which is a pharmaceutical label for Adderall.

14.     The search of FEROLITO's iPhone also revealed numerous text messages between FEROLITO and Taslakian, in which the two, in lightly coded language, discussed narcotics transactions. The iPhone also contained numerous photographs of FEROLITO and Taslakian together.

*On November 20, 2019, Investigators Searched FEROLITO's Las Vegas Residence and Found Methamphetamine, Fentanyl, Pill Binder and Pill Presses.*

15.     On November 20, 2019, DEA agents in Las Vegas executed a search warrant at 5564 Victoria Springs Court, Las Vegas, Nevada, which was a residence identified as being used by FEROLITO. FEROLITO was present at his residence during this search. During that search, agents recovered two pill presses, more than 20,000 orange pills, which tested positive for methamphetamine and pill binder, approximately 200 blue pills, which tested positive for fentanyl, and more than one pound of crystallized methamphetamine. Investigators also found various quantities of powder, believed to be pill binder, and multiple large plastic, five-gallon orange containers which contained a powder residue. Based on experience and training, investigators believe that these buckets were used to mix the powder, which is then pressed into pill form using the pill press. Investigators also seized approximately $60,000 in cash, and two vehicles, a Bentley and a Range Rover, registered to FEROLITO.

16.     Members of DEA Las Vegas were able to verify that FEROLITO possessed bank statements dated from October 2019, which verified his residential address. Also located were printed Word documents identifying the recipients of narcotics that were shipped, and the location of where the narcotics were shipped.

17.     In addition to shipping records, agents located printed documents identifying a dark web market FEROLITO used to purchase narcotics, which has been identified as Empire Market, which verified his user name as "ADDERALLINC." Agents also located business cards

manufactured by FEROLITO identifying his company name as ADDERALLINC, as well as printed paperwork containing communications between FEROLITO and his drug customers.

18. Moreover, FEROLITO recently purchased a new TDP 5 tablet press machine from an unauthorized distributor located in China. The shipment was detected by CBP and seized on November 14, 2019.

19. In April 2020, FEROLITO was indicted in Nevada state court. A warrant has been issued for his arrest.

*In July and August 2020, FEROLITO Ordered Firmapress, a Powder Substance Used to Bind Pills Together, Multiple Times to His Residence and Another Location.*

20. On September 14, 2020, through company disclosures to the DEA, investigators learned that FEROLITO and Matthew O'Brien purchased the pill binder material, Firmapress, from a company, LFA Machines, based in Fort Worth, Texas.

21. The disclosures showed a total of seven purchases from LFA Machines, made on July 1, 6, 10, and 17, 2020 and August 1, 14, and 17, 2020. The orders placed on July 1, 6, 10, and 17 were sent to 22 Hodgdon Terrace, West Roxbury, Massachusetts, in the name of Matthew O'Brien. The orders placed on August 1, 14, and 17 were sent to 104 Bay Drive, Northborough, Massachusetts ("Target Location #1"), which is believed to be FEROLITO's residence, in the name of Matthew O'Brien, and listed the purchaser as FEROLITO. Purchase orders confirmed that the Firmapress was white in color, and weighed ninety-three kilograms.

22. On September 21, 2020, investigators conducted surveillance at Target Location #1, and observed several packages located near the front entrance of the residence. The packages consisted of items shipped from Amazon and UPS, and all parcels were in the name of Matthew O'Brien.

23. On September 25, 2020, investigators conducted surveillance at Target Location #1, and observed two vehicles parked at the residence. Investigators observed a black Land Rover SUV, bearing Florida registration LXCI61, in the driveway of 104 Bay Drive in front of the garage at Target Location #1. Records from the State of Florida Department of Motor Vehicles identified the registered vehicle as a silver 2005 Mercedes sedan, registered to FEROLITO, which indicated that the registration tag was improperly attached to the black Land Rover. Investigators observed a 2008 Mercedes GL 450 SUV, bearing Florida registration KEUW91, parked in the guest parking space next to the driveway of Target Location #1. Florida DMV records indicate that FEROLITO is the registered owner of this vehicle. During the course of this investigation, investigators have observed both FEROLITO and his mother operating this vehicle.

*On October 6, 2020, Investigators Searched Taslakian's*
*Northborough Residence and Found Narcotics and a Large Amount of U.S. Currency.*

24. On October 6, 2020, investigators executed a search warrant on the residence of Mark Taslakian, FEROLITO's traveling partner and known associate, in Northborough, Massachusetts. During the execution of the search warrant, investigators seized thousands of vials of narcotics, believed to be anabolic steroids, and a large sum of United States Currency.

*On October 7, 2020, FEROLITO Moved Large Items, Including*
*Five-Gallon Plastic Bins, from his Residence to his Storage Unit.*

25. On October 7, 2020, at approximately 9:00 a.m., investigators established surveillance at Target Location #1. Throughout the day, investigators observed FEROLITO drive back and forth between Target Location #1 and Storage Unit # 102, iStorage, 869 Boston Turnpike, Shrewsbury, Massachusetts 01545 ("Target Location #2"), four times.

26. In the first trip, investigators observed FEROLITO depart Target Location #1 and arrive at Target Location #2. They reviewed the surveillance footage and saw FEROLITO move

two, five-gallon orange buckets, which appeared to be taped closed, from his vehicle to the inside of Target Location #2.

27. In the second trip, investigators observed FEROLITO depart Target Location #1 and arrive at Target Location #2. Investigators were unable to gain a vantage point to observe his movements. Investigators then observed FEROLITO depart Target Location #2 and return to Target Location #1.

28. In the third trip, investigators observed FEROLITO depart Target Location #1 and arrive at Target Location #2. Investigators observed FEROLITO back his vehicle to the bay door opening of Target Location #2. When FEROLITO exited his vehicle, investigators observed him wearing black rubber gloves. They observed him move a black, Rubbermaid plastic storage box, two five-gallon orange buckets, and several boxes from his vehicle into Target Location #2. FEROLITO then removed a tarp from Target Location #2 and covered a large object in his vehicle. FEROLITO, using a two-wheel hand-truck, then moved the object into Target Location #2.

29. On the fourth trip, investigators observed FEROLITO depart Target Location #1 in his vehicle and drive to Target Location #2. When he arrived, he pulled his vehicle up to the entrance of Target Location #2. FEROLITO removed one white five-gallon bucket, and two boxes and put them inside Target Location #2. Investigators observed a second, white five-gallon bucket in the rear of FEROLITO's vehicle. When FEROLITO picked it up, he realized it was empty, and left it in the vehicle. Investigators then observed FEROLITO return to Target Location #1.

30. At approximately 6:00 p.m., investigators brought a K-9, trained to detect the odor of narcotics, to the storage facility. Investigators ran the K-9 through one corridor of the storage facility. The handler ran the dog on the outside of at least 10 different storage units. The K-9 alerted for the presence of narcotics outside Target Location #2.

31. Based on my training and experience, I believe that once FEROLITO heard about the search executed at Taslakian's residence, he began moving narcotics, pill binder, and presses from Target Location #1 to Target Location #2.

*On October 8, 2020, Investigators Executed Search Warrants on Target Locations #1 and #2 and Found Suspected Narcotics, Materials to Press Counterfeit Pills, and Pill Presses.*

32. On October 8, 2020, the Honorable Marianne B. Bowler issued warrants authorizing the searches of Target Locations #1 and #2.  20-mj-2535-MBB, 20-mj-2536-MBB.

33. In Target Location #1, investigators found a small quantity of a crystallized substance that field-tested positive methamphetamine and approximately 1,780 grams of orange tablets marked "B-974/30," which is consistent with markings for Adderall pills. Based on experience and training, I believe these pills to be counterfeit and contain methamphetamine.

34. In Target Location #2, investigators found approximately eight kilograms of orange tablets marked "B-974/30," which is consistent with Adderall pills. Based on experience and training, I believe these pills to be counterfeit and contain methamphetamine. Investigators found approximately one pound of a crystallized substance that field-tested positive for methamphetamine, five pill presses, and several large buckets containing powder believed to be pill-binding material mixed with narcotics.

## CONCLUSION

35. Based upon the evidence set forth above, as well as my knowledge, training and experience, I submit that there is probable cause to believe that FEROLITO committed the Charged Offense. Accordingly, I respectfully request that a criminal complaint and arrest warrant be issued for FEROLITO.

36. I further request that the Court order that all papers in support of this criminal complaint, including the arrest warrant, affidavit, and other associated filings, be sealed until

further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I, David Spirito, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

                                      _/s/ David J. Spirito_
                                      DAVID J. SPIRITO
                                      DEA TASK FORCE OFFICER

Subscribed and sworn to telephonically in accordance with Federal Rule of Criminal Procedure 4.1 in Brookline, Massachusetts on October __15, 2020.



HON. MARIANNE B. BOWLER
United States Magistrate Judge